1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9    UNITED STATES OF AMERICA,              Case No. 3:08-cr-00120-LRH-VPC

10                           Plaintiff,     ORDER

11          v.

12   RICHARD YOUNG,

13                           Defendant.

14

15          Before the Court are Defendant Richard Young's ("Young") original and supplemental

16   motion for compassionate release (ECF Nos. 308, 318). The primary basis for the motion(s) was

17   for the care of Young's partner Deborah Schilling ("Ms. Schilling"). The government filed a

18   response (ECF No. 320), to which Young replied (ECF No. 323). After reviewing the briefing, on

19   September 30, 2021, the Court held a hearing regarding Ms. Schilling's health condition, handicap,

20   and need for care (ECF NO. 339). During the proceedings, the Court, after expressing its intention

21   to grant home confinement, directed the parties to submit proposed terms and conditions of home

22   confinement. The government filed its proposed terms and conditions (ECF No. 341), and Young

23   filed a response (ECF No. 343).

24          The Court grants the motion for compassionate release and orders Young to home

25   confinement to care for Ms. Schilling with the terms and conditions described below.

26   I.     BACKGROUND

27          From 2006 until the spring of 2008, Young perpetuated a large-scale fraud operation

28   causing more than 1,400 victims and losses in assets totaling over $13 million.  Young, along with

                                                 1

his co-defendant William Willard, were founding members of "Global One," a "worldwide web-based business" that made trades in the foreign exchange market ("FOREX"). Key to the conspiracy, Young represented to individuals that Global One possessed a proprietary trading software that had tremendous success in FOREX trading. However, the software did not exist, and Global One would go on to suffer substantial losses.

To line his and his co-conspirators' pockets, Young made payments from new investments and declared them to be profits, thereby deceiving investors. Young falsely represented to investors that they would enjoy large returns on investments made to Global One due to its supposed proprietary software. However, with the investments, Young would instead go on to purchase a towing company, real property, and other luxury items for himself and his adult children. Eventually, Young was convicted of Conspiracy, Wire Fraud, Securities Fraud, and Money Laundering. 18 U.S.C. §§ 1349, 1343 and 2, 1957; 15 U.S.C. § 78j(b).

On December 22, 2011, this Court sentenced Young to 300 months of incarceration followed by three years of supervised release. ECF No. 264. Young has been in federal prison since March 30, 2011, and is currently located at FCI Yazoo City, Low, in Yazoo City, MS. He has an expected release date of August 23, 2032. Young filed his original motion, later supplemented by counsel's filing, for an order reducing his sentence to time served or modifying the judgment under 18 U.S.C. § 3582(c)(1)(A) and authorizing any remaining portion of his sentence to be served on home confinement.

## II.   LEGAL STANDARD

Under 18 U.S.C. § 3582(c), "the court may not modify a term of imprisonment once it has been imposed," except under specified conditions. For a motion brought under § 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the Bureau of Prison's inaction for thirty days. The Court finds that Young has exhausted his administrative remedies.

18 U.S.C. § 3582(c)(1)(A) provides:

[T]he court, . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses, for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The relevant United States Sentencing Guidelines policy statement provides that the Court may reduce a term of imprisonment if the Court determines that:

(1)   (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018). Extraordinary and compelling reasons include (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, or (4) any other extraordinary or compelling reason, as determined by the Director of the Bureau of Prisons. *Id.* § 1B1.13 app. n.1.

The Court, in ruling upon a motion for reducing sentence or modifying judgment, may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) to the extent that they are applicable and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Still, these policy statements, and § 1B1.12 in and of itself, are not binding on the Court in its final decision. *See United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021).

///

1

### III.    DISCUSSION

2        The Court will first grant the order for compassionate release, and then, after describing

3   the procedural mechanisms by which the Court will order home confinement, will detail the terms

4   and conditions of Young's supervised release.

5        **A.  Compassionate Release**

6        The Court finds that extraordinary and compelling reasons exist in this case.

7        Initially, Young argued for a reduction in his sentence to time served because of the

8   ongoing COVID-19 global pandemic. ECF No. 308 at 7. The risk of exposure to COVID-19

9   presents an extraordinary and compelling reason warranting compassionate release when it is

10  compounded by an inmate's specific medical condition or characteristic. Young argues that,

11  among other conditions, his chronic pain, hypertension, and obesity give rise to extraordinary and

12  compelling circumstances warranting a reduction in his sentence. *Id.* at 11.  However, as the

13  government points out, Young has been fully vaccinated. ECF No. 320 at 7. The Court is confident

14  that the vaccine will—if not already has—reduce the spread of COVID-19 throughout the federal

15  prison inmate population. At this juncture in the pandemic, there is no indication that the vaccine's

16  efficacy as it relates to severe illness is diminished by any mutation of the virus—including the

17  Delta variant.[1] On balance, because of the extremely promising data surrounding the vaccine, the

18  Court finds that extraordinary and compelling reasons do not exist in this case as it relates to

19  COVID-19.

20       Despite this, Young further argues in his pro se motion, as well as in counsel's

21  supplemental motion, that an extraordinary and compelling reason warranting his release is for the

22  care of his ailing ex-wife, Ms. Schilling. *See* ECF Nos. 308, 318. Ms. Schilling suffers from an

23  ailment known as Charcot foot. ECF No. 308. According to the Cleveland Clinic, Charcot foot is

24  a:

25          rare but serious complication…[that] affects the bones, joints, and soft tissues of
            the foot and ankle. The bones become weak and can break and the joints in the foot
26          or ankle can dislocate. If not caught in its earliest stage, the joints in the foot

27

28  [1] *The Possibility of COVID-19 after Vaccination: Breakthrough Infections*, CDC (Aug. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

collapse and the foot eventually becomes deformed. A deformed foot can cause pressure sores to develop in the foot or ankle. An open wound with foot deformity can lead to an infection and even amputation.[2]

Unfortunately, due to her condition, Ms. Schilling has had all of her toes amputated, has difficulty walking, and suffers from an immense amount of pain daily. ECF No. 319-1. Moreover, Ms. Schilling has severe ulcers on her feet that leave open "fresh bleeding tissue" that don't require anesthetic because of a lack of sensation to the feet. *Id.* As indicated in her medical report and at the September 30th hearing, Ms. Schilling likely will have to have her lower right leg amputated. *Id.* This will invariably leave Ms. Schilling wheelchair bound.

Ms. Schilling has, and will continue to have post-amputation, a difficult time with routine tasks. Ms. Schilling lives alone and currently must navigate stairs in her apartment. After Ms. Schilling becomes wheelchair bound, she will inevitably have to move homes because of the obstacle the stairs create. Without a partner to care for her, Ms. Schilling will face exceptional hardship living alone. Moreover, Ms. Schilling relies solely on social security and food stamps to pay for her bills and groceries. Financial support from a partner would be an enormous help to Ms. Schilling.

At the hearing, the Court inquired as to any family or friends—other than Young—who could assist Ms. Schilling. Ms. Schilling made clear that, at least in the Great Falls, Montana area, there is nobody to provide her the type of care that she requires. Ms. Schilling asserted that if Young is not granted supervised release, then she will stay in pain and continue facing countless daily hardships.

The Court finds that given this consideration, that is, the support and care for Ms. Schilling, extraordinary and compelling reasons warrant Young being ordered to home confinement with location monitoring to serve the rest of his sentence. The procedural and statutory information as to how to achieve this result is explained below.

///

///

---

[2] *Charcot Foot*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/15836-charcot-foot (last visited Aug. 24, 2021).

1

### B.  Procedural Considerations

2       While a criminal defendant is serving his custodial sentence, BOP alone has the authority

3   to determine where he will serve that sentence. This includes the decision to designate an inmate

4   to serve a portion of his sentence in home confinement, as opposed to a prison. *See* 18 U.S.C. 3624

5   ("The authority under this subsection may be used to place a prisoner in home confinement for the

6   shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.") In the wake of

7   COVID-19, the Attorney General expanded the availability of home confinement and directed

8   BOP to review a wider range of inmate for eligibility. But this did not change the fact that federal

9   law provides BOP—not the Court—with exclusive authority to determine where a prisoner will

10  serve his custodial sentence. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the

11  place of the prisoner's imprisonment…Notwithstanding any other provision of law, a designation

12  of a place of imprisonment under this subsection is not reviewable by any court."); see also

13  *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision

14  where to house inmates is at the core of prison administrators' expertise.").

15      Section 3582(c)—the compassionate release statute—contemplates only a reduction in

16  sentence. *See* 18 U.S.C. § 3582(c). It does not authorize the Court to order a defendant to "serve

17  his sentence" at home.

18      However, the statute does authorize a procedure that can achieve a similar result. When a

19  court grants a sentence reduction, it may "impose a term of . . . supervised release with or without

20  conditions that does not exceed the unserved portion of the original term of imprisonment." 18

21  U.S.C. § 3582(c)(1)(A). In imposing that new, additional term of supervised release, the Court

22  may impose home confinement as a condition of that supervised release term, provided that the

23  Court finds home confinement is a "substitute for imprisonment." U.S.S.G. § 5F1.2; *see* 18 U.S.C.

24  § 3583(d). Although the end result may seem the same—i.e., the defendant on home confinement

25  for the amount of time he had left on his custodial sentence—the difference is legally significant

26  because a defendant designated to home confinement by BOP is still "in BOP custody" serving

27  his custodial sentence, whereas a defendant on supervised release is not.

28

Based on this procedural backdrop, the Court will grant Young's motion for compassionate release and reduces his custodial sentence to time served. The Court will also impose an additional term of supervised release, pursuant to 18 U.S.C. § 3582(c)(1)(A), to last until a date not later than August 27, 2032, Young's current BOP projected release date, with conditions of release described below. At the completion of that new term of supervised release, Young will begin the three-year term of supervised release the Court imposed at Young's sentencing hearing, with the conditions of supervision imposed at that hearing.

**C.  Terms and Conditions of Supervised Release**

The new supervised release term will include all the standard and special conditions the Court previously imposed with the respect to the initial term of supervised release. ECF No. 264 (judgment), at 3–4. This will include a condition of home confinement as it serves as a "substitute for imprisonment." U.S.S.G. § 5F1.2; *see* 18 U.S.C. § 3583(d). Furthermore, and perhaps most importantly, as a condition of Young's supervised release, the Court will require him to provide devoted full-time support, care, and assistance to Ms. Schilling for her handicap at all times. The probation office shall ensure this requirement is met with appropriate check-ins at its discretion.

The Court will also impose additional conditions, recommended by the government, as it relates to three areas: movement, internet access, and financial transparency.[3] The Court notes that these additional conditions are to achieve the "goals of deterrence, public protection, and rehabilitation," and are narrowly tailored to Young's criminal history with financial fraud and other circumstances. *See United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006) (alteration in opinion) (citations omitted); *United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016). Young's objections to these terms have also been considered.

1.  Movement

Young is set to serve a lengthy term of home confinement. Still, there may be instances whereby Young must leave his residence to care for Ms. Schilling, including, but not limited to,

---

[3] These additional terms come after the government notified the Court that since his term of imprisonment, Young has failed to provide Ms. Schilling any financial assistance despite still receiving funds from investors previously involved in his criminal scheme. Young contends that these funds are to "alleviate the pressure on Ms. Schilling to support him." ECF No. 343, at 4. The Court does not impose any additional conditions of release because of these allegations. Rather, Young's criminal history and circumstances serve as the basis for these conditions.

doctor's appointments, errands, grocery shopping, and his own employment. To ease the burden on the probation officer that would have to pre-approve each of these outings, the Court will impose a curfew from 10 p.m. to 6 a.m. and will prohibit Young from travelling outside the Great Falls, Montana area without prior approval from his probation officer or the Court. The Court believes these conditions will allow Young to adequately care for Ms. Schilling, while also allowing the probation office to adequately perform its duties without hinderance.

### 2. Internet Access

There are various restrictions the Court will impose as to Young's internet access. Each is detailed below.

#### i. *Internet Service Provider*

Young may access the worldwide web (*i.e.,* internet) only through one internet service provider ("ISP") account with one ISP. Young shall inform his probation officer of the name of any ISP account he acquires or uses for this purpose, the name under which the ISP account is maintained, any internet protocol address associated with the account, any username associated with the ISP account, and any street address associated with the account. Young shall not directly, indirectly, or through a third-party, access the internet other than through the ISP account designated and identified by the defendant in accordance with this condition, to include any access provided through or by a commercial or non-commercial establishment or entity, such as an airline, hotel, restaurant, coffee shop, church, community center, or other such organization.

#### ii. *Email*

Young may maintain one email address and one email account, to include accounts provided at no charge by such internet services as Google, Gmail, or Yahoo!. Young must inform his probation officer of the username and address used in connection with the email account.

#### iii. *Communication Device*

Unless expressly approved otherwise by the probation officer, Young may use, or acquire to use, only one electronic communication device. An electronic communication device includes any device used to communicate electronically with another person or entity by and through any

means whether by voice, signal, words, letters, or images and includes, without limitation, cellular telephones, Smartphones, iPads, tablets, notebooks, and desktop or laptop computers.[4]

Young shall provide the probation officer with any number associated with or assigned to the electronic communication device or account used in connection with the device.

Young shall notify the probation officer within 72 hours of acquiring or changing any type of electronic communication device.

Upon request by the probation officer, Young shall provide consent for the probation officer to access any electronic communication device, ISP account, and/or any email account for the purpose of inspecting the device or account to ensure compliance with the terms and conditions of supervised release set forth herein. Such consent will include providing the probation officer with any username, password, or other security code, to allow access to the device or account for purposes of inspection.

iv.    *Social Media*

Young shall not maintain, use, communicate through, or participate in or with any social media or social media account, to include, without limitation, Facebook, Twitter, Tik Tok, YouTube, or Instagram.

Young's use of an approved email account with one of the email providers detailed above, i.e., Google, Gmail, or Yahoo, does not mean Young is in violation of this condition. Moreover, the Court recognizes that virtually every website has a social media component, but this does not mean by simply accessing a website with social media capabilities is Young in violation of this condition. Rather, Young must not *engage* with these social media components, including, without limitation, messaging, commenting, or chatting.

v.    *Deletion of Data*

Young shall not delete or otherwise destroy any electronic communication conducted over the internet and/or through an electronic communication device. If Young must delete data from his electronic communication device for the purposes of storage space, then he must first notify

---

[4] The Court uses the term "notebook" to describe a brand of laptop, not as Young suggests, paper notebooks.

his probation officer that he is going to delete any text messages, voicemail messages, emails, website form submission data, etc.

Young shall not use or maintain any application used in connection with the use of an electronic communication device that allows for automatic deletion or destruction of any communications conducted on the device whether by voice, text, image, words, or signals.

vi.    *Online Business Activity*

Except with the prior permission of the probation officer, Young shall not use an electronic communication device or ISP account, to engage in any business or financial activity over the internet, including: trading in stocks, currency, bitcoin, futures contracts, or other goods or commodities; purchasing, selling, leasing, or trading real, tangible, or intangible property; providing financial advice or financial consulting services; or conducting classes, seminars, or education programs on any matter involving or relating to financial transactions of any kind. As detailed below, this does not include checking his bank account balance or making electronic payments for personal bills, living, and medical expenses of $999.99 or less.

Young may use an electronic communication device and access the internet for the purpose of seeking and or maintaining lawful employment provided the probation officer approves the employment or employment application. With regard to internet access by or for lawful employment, such access will be limited to employment purposes only and in accord with and subject to any work rules or usage limitations imposed by the employer.

3.    Financial Transparency

Like internet access, the Court will similarly impose restrictions relating to Young's financial transactions. Each is detailed below.

i.    *Debt Obligation*

Young shall be prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts, without the approval of the probation office. ECF No. 264, at 4.

///

///

ii.   *Access to Financial Information*

Young shall provide the probation office access to any requested financial information, including personal income tax returns, authorization for release of credit information, bank account information, and any other business financial information in which Young has a control or interest. ECF No. 264, at 4.

iii.   *Self-Employment*

Young shall not enter into any self-employment while under supervision without prior approval of the probation officer.

iv.   *Number of Checking Accounts*

Young shall not maintain more than one business and/or personal checking account, and shall not open, maintain, be a signatory on, or otherwise use any other financial institution account without the prior approval of the probation officer.

v.   *Online Banking*

Young may use the internet to access a personal checking account designated herein for the purpose of checking the balance or making electronic payments for personal bills, living, and medical expenses of $999.99 or less.

vi.   *Transaction Caps*

Young shall not transfer, sell, give away, or otherwise convey any asset with a value of $1,000 or more without the approval of the probation officer.

vii.   *Gifts*

Young shall report the receipt of any gifts of monetary value (including cash, cash equivalents, goods and/or services) from any source to the probation officer.

///

///

///

///

///

///

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that Young's motion(s) for compassionate release (ECF Nos. 308, 318) are **GRANTED** and his current custodial sentence is reduced to time served.

IT IS FURHTER ORDERED that upon release from imprisonment Young shall be on supervised released to last until a date not later than August 27, 2032, Young's current BOP projected release date, with conditions of supervised release described in this Order including home confinement and devoted support, care, and assistance to Ms. Schilling at all times. At the completion of his new term of supervised release, Young will begin the three-year term of supervised release the Court imposed at Young's original sentencing hearing, with the conditions of supervision imposed at that hearing.

IT IS FURTHER ORDERED that the government's motion for leave to file sealed exhibits (ECF No. 321) is **GRANTED** for privacy considerations.

IT IS FURTHER ORDERED that Young's motion for leave to filed sealed exhibits (ECF No. 337) is **GRANTED** for privacy considerations.

IT IS FURTHER ORDERED that Young's release be delayed 14 days to ensure a sufficient period of quarantine so that he will not potentially infect Ms. Schilling and to allow the Bureau of Prisons to prepare for Young's supervision.

IT IS SO ORDERED.

DATED this 20th day of October, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE